UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. ________________________

HUMANA INSURANCE COMPANY,

*Plaintiff*,

v.

ASSOCIATED INDUSTRIES
INSURANCE COMPANY, INC.,

*Defendant*.

## COMPLAINT

Plaintiff, Humana Insurance Company ("Humana"), brings this action for declaratory judgment and monetary damages to recover amounts due and owing to Humana, a Medicare Advantage Organization ("MAO"), pursuant to the Medicare Secondary Payer ("MSP") law. Under the MSP law, Defendant became liable to reimburse Humana for conditional Medicare payments that it made on behalf of its insured, Arnold Hariton, when Defendant settled a worker's compensation claim with him.

## PARTIES

1. Plaintiff, Humana Insurance Company ("Humana"), is a Wisconsin corporation with its principal place of business at 500 W. Main St., Louisville, KY 40202. Plaintiff, Humana, contracts with the Center for Medicare and Medicaid Services ("CMS") to administer Medicare benefits for Medicare beneficiaries who elect to enroll in Medicare Advantage ("MA" or "Medicare Part C"). Plaintiff, Humana, is part of the Humana family of companies.

2. Defendant Associated Industries Insurance Company, Inc. ("Defendant") is a Florida Corporation with its principal place of business at 903 N.W. 65th Street, Boca Raton, FL 33487. Defendant is a subsidiary of AMTRUST North America, Inc., a Delaware Corporation that claims to be a "leading workers' compensation insurance company nationwide."[1] As relevant here, Defendant provided workers' compensation coverage to Arnold Hariton (Humana's Medicare Advantage enrollee), who was employed by DNP Associates, Inc.

## JURISDICTION AND VENUE

3. This action arises under the laws of the United States and involves federal questions. The Court therefore has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

4. Venue is proper in the Southern District of Florida because (1) Defendant does business in, and thus resides in, this judicial district and (2) a substantial part of the events or omissions giving rise to this action occurred in this judicial district. 28 U.S.C. § 1391(b) and (c).

## LEGAL BACKGROUND

5. Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease. Congress enacted the Medicare Program as Title XVIII of the Social Security Act ("Medicare Act"). 42 U.S.C. § 1395, *et seq*. Medicare is an enormous and complex federal program that insures over 50 million Americans with total expenditures of over $600 billion.

6. In response to the rising cost of healthcare paid for by the Medicare program, Congress created the Medicare Advantage program "to harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more

[1] *See* https://amtrustfinancial.com/insurance-products/workers-compensation.

efficient and less expensive Medicare system." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 685 F.3d 353, 363 (3d Cir. 2012) (citing H.R.Rep. No. 105–217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205–06 (Conf. Rep.)).

7. Moreover, and in response to the same concern, Congress determined that, in the event of a workplace injury, workers' compensation plans were to provide the primary source of recovery, with Medicare to be the secondary source of recovery. *See, e.g.*, 42 U.S.C. § 1395y(b)(2).

8. However, workers' compensation settlements frequently involve disputed obligations and occur well after medical expenses have been incurred, meaning that the status of carriers as primary payers is often not known until after Medicare Advantage Organizations ("MAOs") have issued payments to providers that treated Medicare beneficiaries. MAOs must then seek reimbursement from the enrollee and/or the primary payer.

**9.** Where, as here, the primary payer was (or should have been) aware of the existence of a conditional payment, it is in a position to reserve funds and ensure that they are paid directly to Medicare payors (including MAOs), protecting Medicare and the government from individual enrollees that may disregard their reimbursement obligations and exhaust available settlement proceeds. This is a substantial and widespread problem and contributes to the ongoing annual deficits in the Medicare Trust Funds, which in turn increases the costs borne by elderly and disabled beneficiaries who enroll in Medicare Advantage plans.

**The Medicare Act**

10. Subchapter XVIII of the Social Security Act – commonly called the Medicare Act – is divided into five "Parts."

11. Part A is automatic and provides hospital and certain other facility benefits. *See* 42 U.S.C. §§ 1395c to 1395i-5. Part B provides medical benefits, and although heavily subsidized

by the federal government, is a voluntary program that requires a small premium from the beneficiary. *See* 42 U.S.C. §§ 1395j to 1395w-4. Parts A and B are often collectively referred to as the "original Medicare fee-for-service program option."

12. Medicare Part C creates an alternative option for Medicare benefits provided by private contractors. *See* 42 U.S.C. §§ 1395w-21 to 1395w-29. Congress enacted Medicare Part C to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.). Congress initially called this program "Medicare + Choice." *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, Title IV, §§ 4001-4006, 111 Stat. 251, 275-334 (Aug. 5, 1997). In 2003, Congress strengthened the program and renamed it "Medicare Advantage." *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, Title II, §§ 201-241, 117 Stat. at 2176-221.

13. Medicare Part D is the voluntary prescription drug benefit, added in 2003. *See* Title I, §§ 101-111, 117 Stat. 2066, 2071-176 (Dec. 8, 2003) (codified at 42 U.S.C. §§ 1395w- 101 to 1395w-152).

14. The final "Part" of Title XVIII is Medicare Part E, which contains definitions and general provisions applicable to the whole of the Medicare program. *See* 42 U.S.C. §§ 1395x - 1395y. The Medicare Secondary Payer law, 42 U.S.C. 1395y(b), is codified in Part E.

**The Medicare Advantage (Medicare Part C) Program**

15. The Medicare Act guarantees eligible beneficiaries the right to elect to receive Medicare benefits either through the Original Medicare fee-for-service option or through a Medicare Advantage plan. *See* 42 U.S.C. § 1395w-21(a). Approximately 30% of all Medicare beneficiaries elect Medicare Advantage plans.

16. Medicare Advantage is a federal program, operated under federal rules, funded by federal dollars.

17. The funds for Medicare Advantage benefits come from the Medicare Trust Funds. *See* 42 U.S.C. § 1395w-23(f). The Medicare Trust Funds expend more than one hundred billion dollars annually to provide Medicare benefits through the Medicare Advantage program.

**18.** The Conference Committee which finalized the legislation that became Medicare Part C believed that Medicare Advantage would "eventually eclipse original fee for service Medicare as the predominant form of enrollment under the Medicare program." Balanced Budget Act of 1997, P.L. 105-33, H.R. Conf. Rep. 105- 217 (July 30, 1997).

**Medicare Advantage Organizations**
**And the Medicare Secondary Payer Law**

19. In 1980, in response to skyrocketing costs, Congress began enacting the provisions that now comprise the Medicare Secondary Payer Law ("MSP Law"), 42 U.S.C. § 1395y(b). The primary intent underlying the MSP law is to shift the financial burden of health care from the Medicare program to private insurers and thereby lower the overall cost of the Medicare program.

20. The MSP law is codified as 42 U.S.C. § 1395y(b), in Part E of the Medicare Act, which contains definitions and other general provisions pertaining to the Medicare program as a whole. The terms of the MSP law make clear that it is applicable to all payments "under this Subchapter," 42 U.S.C. § 1395y(b)(2)(A), which includes payments made by MAOs under Part C of the Act.

21. Moreover, Part C of the Medicare Act expressly incorporates the MSP law into the Medicare Advantage program, authorizing an MAO to charge a primary plan or an individual that has been paid by a primary plan "under circumstances in which payment under this title is made

secondary pursuant to" the MSP law (§ 1395y(b)(2)). 42 U.S.C. §1395w- 22(a)(4). In so doing, Congress expressed its understanding and intention that the MSP law applied to Medicare Part C.

22. The MSP law creates a federal coordination of benefits scheme, in which worker's compensation, liability insurance, and no-fault insurance are primary, and Medicare benefits are secondary. *See* 42 U.S.C. § 1395y(b)(2); 42 C.F.R. § 422.108(b)(3).

23. Under the MSP Law, "the term 'primary plan' [includes] … a workmen's compensation law or plan." 42 U.S.C. § 1395y(b)(2)(A)(ii).

24. When an MAO makes a payment for medical services that are the responsibility of a primary plan under the MSP law, those payments are conditional, whether the primary plan's liability was established at the time of the conditional payment or not. Federal regulations define the term "conditional payment" under the MSP law to mean "a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed." 42 C.F.R. § 411.21.

25. As with any system of coordination of benefits, the Medicare Secondary Payer regime involves both avoidance and recovery. Optimally, when items and services are covered by both a primary plan and by Medicare benefits, the providers submit their charges to the primary payer, and Medicare ***avoids*** the expense of paying those charges. Alternatively, when Medicare makes a conditional payment for medical services that have a primary payer, regardless of the reason, Medicare may seek to ***recover*** those conditional payments. *See* 42 U.S.C. § 1395y(b)(2); § 1395y(b)(3)(A).

26. Because Medicare Advantage is simply another way in which Medicare beneficiaries may receive Medicare benefits, the same MSP rules apply. *See* CMS, Medicare

Managed Care Manual, Chap. 4, § 130.3 (Rev. 107, 06-22-12) ("In the case of the presence of workers compensation, no-fault and liability insurance (including self-insurance), Medicare makes conditional payments if the other insurance does not pay promptly. These conditional payments are subject to recovery when and if the other insurance does make payment.").

27. CMS has interpreted the MSP Law as it applies to MAOs in a formal regulation, which states that "[t]he MAO will exercise the same rights to recover from a primary plan, entity or individual, that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). An entity that receives payment from a primary plan shall therefore be required to reimburse an MAO for conditional Medicare payments.

28. CMS has further explained that the regulation assigns MAOs "the right, under existing Federal law, to collect for services for which Medicare is not the primary payer" using "the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations." CMS, Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

29. The MSP Law makes clear that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse" any conditional Medicare payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

30. The enforcement provision of the MSP law authorizes a private cause of action to recover primary payments or reimbursements owed under the MSP law. 42 U.S.C. § 1395y(b)(3)(A). The provision further provides that damages "shall be in an amount double the amount otherwise provided." *Id.*

31. An MAO that has advanced Medicare benefits has standing to bring the MSP private cause of action. *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.,* 832 F.3d 1229 (11th

Cir. 2016); *In re Avandia Mktg.,* 685 F.3d 353 (3d Cir. 2012); *Humana Ins. Co. v. Paris Blank LLP*, 187 F. Supp. 3d 676 (E.D. Va. 2016); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.,* 2015 WL 5449221, at *6 (E.D. Tenn. Sep. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.,* 73 F. Supp. 3d 653, 665 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.,* 95 F. Supp. 3d 983, 986 (W.D. Tex. 2014).

32. Plaintiff, Humana, has standing under 42 U.S.C. § 1395y(b)(3)(A) to bring this private cause of action to recover double damages from Defendant because (1) Humana made payments of Medicare benefits on behalf of its MA Enrollee, for which Humana was not primarily liable and (2) Defendant was primarily liable but failed to reimburse Humana.

33. When Medicare Advantage plans recover reimbursement from primary plans or other liable parties pursuant to the MSP law, those recoveries help reduce Medicare expenditures by the Medicare Trust Funds. *See* HHS, *Medicare Program; Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs,* 75 Fed. Reg. 19678, 19797 (April 15, 2010) ("MAOs that faithfully pursue and recover from liable third parties will have lower medical expenses.").

34. Thus, MSP recoveries by MAOs fulfill the essential purpose of the MSP law and Medicare Part C – creating a more efficient and less expensive Medicare program.

## **FACTUAL BACKGROUND**

35. On or about December 29, 2016, Mr. Hariton fell from a ladder while maintaining a light fixture at work (the "Workplace Accident").

36. At the time of the Workplace Accident, Mr. Hariton was eligible for Medicare and had elected Medicare Part C coverage through Humana.

37. Mr. Hariton received Medicare benefits for injuries sustained during the Workplace Accident. Specifically, Humana has made at least $26,214.83 in conditional payments on Medicare claims submitted on behalf of Mr. Hariton for medical services rendered as a result of the Workplace Accident.

38. On information and belief, Mr. Hariton made a worker's compensation claim against Defendant that included a claim for medical expenses.

39. Humana learned of the workers' compensation claim after Mr. Hariton's attorney contacted it in 2019 to notify Humana of his representation of Mr. Hariton in that proceeding.

40. Defendant was aware that Humana had made conditional Medicare payments on Mr. Hariton's behalf because Humana sent Defendant notices of its Medicare lien rights in April and September 2019.

41. Upon information and belief, Defendant settled Mr. Hariton's claims for compensation and medical expenses for an amount unknown to Humana on or about October 8, 2019. ("Workers' Compensation Settlement").

42. By virtue of this Workers' Compensation Settlement, Defendant acknowledged that it was the primary payer, and its policy became the primary plan under 42 U.S.C. § 1395y(b)(2). As such, Defendant was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Humana on behalf of Mr. Hariton.

43. Upon information and belief, Defendant disbursed the settlement payment to Mr. Hariton shortly after the Workers' Compensation Settlement was approved by the Florida Workers Compensation Commission on October 28, 2019.

44. Although Mr. Hariton was primarily responsible for reimbursing Humana within 60 days of Defendant's settlement payment, 42 C.F.R. § 411.24(h), Defendant remained

responsible to reimburse Humana under applicable federal regulations, *e.g.,* 42 C.F.R. § 411.24(i)(1), and, by failing to ensure that this occurred, assumed the risk of being responsible to pay Humana in the event Mr. Hariton failed to do so.

45. Mr. Hariton has not repaid Humana, meaning that Defendant remains responsible for reimbursing Humana, even though it has already paid Mr. Hariton. *See, e.g.*, *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229 (11th Cir. 2016) (primary plan liable to Medicare Advantage Organization for double damages even though it reimbursed Medicare enrollee for medical expenses).

46. To date, Defendant has refused to honor its obligations under the MSP law and, through its attorneys, has consistently disputed Humana's right to recover its conditional payments.

47. Humana has not received any reimbursement to date for the conditional payments it made on behalf of Mr. Hariton.

**COUNT I**

**PRIVATE CAUSE OF ACTION UNDER 42 U.S.C. § 1395y(b)(3)(A)**

48. Plaintiff, Humana, incorporates by reference the allegations of paragraphs 1 through 47 of the Complaint as if set forth herein.

49. Plaintiff, Humana, made payments of Medicare benefits for items and services required by Arnold Hariton as a result of the injuries he sustained in the Workplace Accident.

50. Defendant was a primary payer, as defined in 42 U.S.C. § 1395y(b)(2) and § 1395w-22(a)(4), with respect to medical expenses incurred by Mr. Hariton but paid by Humana.

51. Because Humana was not reimbursed for the Medicare payments it advanced on behalf of Mr. Hariton, Defendant remains liable to reimburse Humana despite its settlement payments. *See* C.F.R. § 411.24(i)(1).

52. Defendant did not make appropriate reimbursements to Humana for the items and services for which Humana advanced conditional payments.

53. Congress established a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), permitting the recovery of double damages for a failure to make appropriate reimbursement in accordance with the MSP law.

54. Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff, Humana, is entitled to recover "an amount double the amount otherwise provided."

55. The amount "otherwise provided" is set forth in 42 C.F.R. § 411.37, entitled "Amount of Medicare recovery when a primary payment is made as a result of judgment or settlement." Where, as here, the Medicare payer is required to litigate because of a primary payer's refusal to make appropriate reimbursement, the required reimbursement is the lesser of the "Medicare payment" or "total judgment of settlement amount, minus the party's total procurement costs." 42 C.F.R. § 411.37(e).

56. Humana demands double damages in an amount to be determined under the formula set forth under 42 C.F.R. § 411.37 in accordance with 42 U.S.C. § 1395y(b)(3)(A).

Based on the above claims, Plaintiff, Humana, seeks the following relief:

(1) Double damages under 42 U.S.C. § 1395y(b)(3)(A);

(3) Pre- and post-judgment interest; and

(4) Such other relief the Court deems proper.

**WHEREFORE**, Plaintiff, Humana, prays that the Court enter judgment on behalf of Humana and against Defendant and award Humana all requested relief.

Dated: December 14, 2020

Respectfully submitted,

/s/ Emilia A. Quesada

Emilia A. Quesada, Esq.
Florida Bar No. 092045
equesada@smgqlaw.com
Raul L. Perez, Esq.
Florida Bar No. 029400
rperez@smgqlaw.com
Sanchez-Medina, Gonzalez, Quesada, et al.
201 Alhambra Circle, Suite 1205
Coral Gables, Florida 33134
Telephone: (305) 377-1000
Facsimile: (855) 898-1359
*Counsel for Plaintiff*